**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| DIAMONDS DIRECT USA, INC.,            )<br>   a Delaware corporation,                    )<br>                                                            )<br>                        Plaintiff,                   )<br>                                                            )<br>v.                                                       )<br>                                                            )<br>DIAMONDS DIRECT, INC.,                  )<br>   a Florida corporation,                        )<br>                                                            )<br>                        Defendant.              )<br>                                                            ) | Civil Action No. 8:17-cv-01324-VMC-CPT |

**PLAINTIFF'S MOTION FOR LEAVE TO TAKE A DEPOSITION, REQUIRE DEFENDANT TO PAY FOR THIS DEPOSITION PURSUANT TO FED. R. CIV. P. 37, AND EXTEND THE DEADLINE FOR PLAINTIFF TO POTENTIALLY PURSUE A MOTION IN LIMINE RELATING TO DEFENDANT'S DELINQUENT DISCOVERY**

Plaintiff, Diamonds Direct USA, Inc. ("Plaintiff") respectfully seeks leave of Court to conduct a single deposition of no more than four (4) hours of Defendant. Plaintiff seeks this leave so that it can explore facts relating to documents Defendant produced months after the close of discovery, related to Defendant's customer base, and to determine whether this delinquent data should be excluded from consideration at trial, in the event that trial is necessary. Plaintiff also respectfully requests that the Court require Defendant to pay Plaintiff's attorney fees in connection with this deposition pursuant to Fed. R. Civ. P. 37. Plaintiff requests the trial date to remain unchanged, since Plaintiff can take the deposition as soon as permitted by the Court. Plaintiff also requests the deadline for Plaintiff to pursue a potential motion in limine related to Defendant's delinquent discovery be extended long enough for Plaintiff to conclude the requested deposition and analyze the testimony therein. Plaintiff regrets that it must pursue

this relief through motion practice, but the parties have been unable to find an agreeable resolution despite good faith efforts to resolve these issues.

## SUMMARY OF ARGUMENT

Plaintiff believes its pending summary judgment motion disposes of all issues in this case. Plaintiff has superior federal rights to the DIAMONDS DIRECT® trademark. Defendant has interfered with Plaintiff's rebranding of its recently-acquired Jacksonville store, arguing that Defendant's improperly issued state trademark registration for the mark "DIAMONDS DIRECT" somehow expands Defendant's common law trademark rights statewide. As reflected in the summary judgment briefing, Defendant has now abandoned that legal theory, and instead relies only on its common law trademark rights. But those common law trademark rights do not extend to Jacksonville, as shown through Plaintiff's summary judgment motion. After briefing on that motion concluded, Defendant produced "additional" and "corrective" data on its customers. This new data appears to show fewer customers that listed home addresses in Jacksonville, further demonstrating Defendant's lack of common law trademark rights in the Jacksonville market. Through this Motion, Plaintiff seeks to learn the facts and details related to Defendant's delinquent discovery production to avoid any unfair surprises should a trial be necessary[1]. Since the discovery should have been produced during the discovery period, Plaintiff also requests Defendant bear the cost of this additional deposition.

## INTRODUCTION

Plaintiff owns 18 jewelry stores throughout the country. All but one of these stores operates exclusively under Plaintiff's DIAMONDS DIRECT® trademark. Plaintiff has two

---

[1] The issues raised in Plaintiff's summary judgment motion remain ripe for resolution. Plaintiff's federal trademark rights trump Defendant's limited common law trademark rights. At best, it appears Defendant's delinquent discovery production demonstrates Defendant's limited common law rights were even more narrow than known previously.

federal trademark registrations at issue in this litigation. Plaintiff acquired a jewelry store in Jacksonville, Florida that it wishes to rebrand under its national DIAMONDS DIRECT® trademark, but Defendant has interfered with those efforts. This litigation seeks to resolve that interference.

Defendant is a family-owned jewelry store with a single location in St. Petersburg, Florida. Defendant owns a Florida State Trademark registration[2] for the words "DIAMONDS DIRECT."

Defendant objected to Plaintiff rebranding its Jacksonville store, based on Defendant's position that its state trademark registration gives it trademark rights throughout the entirety of Florida. Plaintiff disagreed, as its federal trademark rights are superior to Defendant's limited common law rights in St. Petersburg. This litigation ensued.

Throughout the course of discovery, Defendant maintained that its state trademark registration expanded its limited common law rights throughout Florida. But Defendant never provided any law to support this position. Indeed, as reflected in Defendant's summary judgment briefing, Defendant now essentially concedes that its (improperly-issued) state trademark registration does not expand its limited common law rights.[3]

Given the narrow issues to resolve, namely, (i) whether a state trademark registration expands the geographic scope of limited common law rights in the face of prior federal rights (it does not), and (ii) the extent of Defendant's limited common law rights, the parties agreed to an

---

[2] As explained in Plaintiff's Motion for Summary Judgment, Defendant's state trademark registration was improperly issued.

[3] Defendant did not disagree with Plaintiff's legal argument explaining how federal trademark rights lock in common law trademark rights at the time of the federal registration, and how state-based trademark registries do not expand the geographic scope of such limited common law trademark rights. Instead, Defendant focused its summary judgment position only on its limited common law trademark rights.

aggressive discovery and trial schedule.  This was also largely based on Plaintiff's need to get this issue resolved as promptly as reasonably possible, as every day Plaintiff must continue operating its Jacksonville store under a different brand than the rest of its 18 stores reflects a significant loss to Plaintiff both financially and operationally.  Financially, Plaintiff is forced to continue investing in a brand in Jacksonville that it knows it will not need long term.  Instead, Plaintiff will likely need to devote significant resources to reeducating the Jacksonville market when Plaintiff ultimately rebrands its Jacksonville store under its national DIAMONDS DIRECT® trademark.  Operationally, Plaintiff must deal daily with the logistics and inconsistency of maintaining a national brand with one outlier store location, operating temporarily under a different name.

Through discovery, Plaintiff sought to confirm the extent of Defendant's trademark usage to confirm it has always been limited only to St. Petersburg.  As explained in Plaintiff's Summary Judgment Motion, Defendant's discovery responses confirmed that Defendant has only a limited presence in the greater-St. Petersburg area.  But two months after Plaintiff filed its Summary Judgment Motion (and two weeks after completion of briefing on this motion), Defendant produced its *Eighth Supplemental* Response to Plaintiff's First Request for Production.  Notably, Plaintiff's discovery requests were served the day after discovery opened, and sought:

- Documents sufficient to show the city and state of all consumers of Defendant's goods or services;

- Documents concerning the geographic areas (by City and State) where Defendant's products or services are sold, marketed, or promoted and the length of time each product or service has been sold, marketed, or promoted in each area;

- Documents concerning the channels of trade through which Defendant's products or services are sold, marketed, or promoted;

- Documents concerning the yearly dollar and unit volume of sales to date and projected future dollar and unit volume of sales of each of Defendant's products or services.

Defendant produced multiple rounds of responses purportedly addressing these requests. Defendant gathered information from its customer database (called the "Edge system") and produced large sets of data as pdf documents. Both parties relied on this data that Defendant produced before the close of discovery in their respective summary judgment briefing. *See* Defendant's Sealed Exhibits 2, 3, 4, and 6 filed in connection with Defendant's Opposition to Plaintiff's Summary Judgment Motion [Dkt. 43].

After summary judgment briefing was concluded, Defendant produced its Eighth Supplemental Response to Plaintiff's initial discovery request.[4] While it appears these delinquent discovery documents actually present a slightly *worse* case from Defendant's perspective, Defendant also produced a number of maps of Florida that it generated from this new data, likely in an effort to show its newly produced data in a favorable light.

Further, the newly produced discovery contradicts the discovery Defendant timely produced. For example, Defendant's prior discovery indicated that a single customer, who purportedly lives in Jacksonville, purchased, at most, $325.00 worth of jewelry in a single transaction, but the delinquent discovery now indicates a higher sales figure for that customer.

Defendant cannot be permitted to further challenge Plaintiff's Summary Judgment motion by rerunning statistics in an effort to manufacture some different purported sales amount

---

[4] This is not the first time Defendant avoided its discovery obligations. *See e.g.* Plaintiff's Reply in Support of its Summary Judgment Motion [Dkt. 49] at 1 (noting that Defendant relied on an unproduced discovery document in opposition to Plaintiff's summary judgment motion). Plaintiff has sought to litigate this case efficiently by avoiding ancillary motion practice on discovery disputes. The present motion is necessary, however, as Defendant cannot be permitted to supplement and change its discovery productions after the fact based on the summary judgment briefing.

for customers that might have a Jacksonville address. By attempting to introduce new facts or documents not disclosed during discovery, Defendant seeks to unfairly prejudice Plaintiff, in the event this case is not resolved on summary judgment, or perhaps on appeal. To prevent any such prejudice, Plaintiff seeks leave to depose Defendant and learn the facts behind the creation of this new data. Plaintiff also requests that its attorneys' fees and costs incurred due to the prejudice caused by Defendant's conduct be shifted to Defendant pursuant to Rule 37's fee-shifting provisions.

## DELINQUENT DISCOVERY

The Case Management Order [Dkt. 20] called for discovery to close on January 26, 2018. Plaintiff served its discovery requests timely. Plaintiff's first requests for production of documents were served the day after discovery opened, namely, July 18, 2017. Responses to those requests were due August 17, 2017.

Defendant produced a number of responses to those first document requests, including producing Defendant's *sixth* supplemental responses to those first document requests on the day discovery closed. But more than two months after discovery closed, and after Plaintiff's pending Motion for Summary Judgment [Dkt. 36] was filed and fully briefed, Defendant produced its *seventh* and *eighth*[5] supplemental responses to Plaintiff's first document requests.

Defendant, through its counsel, has provided vague and evasive explanations as to why these documents were produced so late, and what changes, if any, exist in these latest documents. In particular, Defendant's eighth supplemental responses were, by Defendant's own statement, served to correct erroneous information previously produced. This eighth round of document productions is approximately 350 pages of an export from Defendant's customer management

---

[5] Defendant's seventh supplemental responses were produced on March 30, 2018, and its eighth supplemental responses were produced on April 11, 2018.

-6-

database, and a few "heat maps" (maps purporting to reflect geographic groupings based on the data), which Defendant generated from these new database exports. Defendant had previously produced different exports from its Edge system.

At no point during discovery, or even during summary judgment briefing, did Defendant indicate there may be an error or issue with its prior customer data productions. Instead, months later, Defendant has produced this latest customer database data, together with a vague statement that:

> [Defendant] also learned through the review of these documents that the information for several of the customer numbers had zip codes that did not match the full street address, city, and state listed for that customer number. This caused erroneous information in some of the documents previously produced by [Defendant] showing sales by zip code. Correction of these errors also necessitated supplementation.

Exhibit A, Letter from B. Maxey to W. Pollack, April 10, 2018. Following receipt, Plaintiff reviewed the delinquent data and compared it to Defendant's previously produced customer data. Plaintiff then asked for a detailed explanation of what caused this latest document production, what errors needed to be corrected, and why it took so long for this production to be made. *See* Exhibit B, Letter from W. Pollack to B. Maxey, April 25, 2018.[6] Plaintiff also identified a discrepancy between the previously produced data and this new delinquent data, particularly dealing with Defendant's alleged Jacksonville customer. *See id*.

Defendant responded with yet *more* data (two more excel spreadsheets), purporting to provide explanations for whatever data was changed. But Defendant did not explain when this attempted data re-creation project began, why it was performed, what errors were sought to be corrected, or even the process used for going through the data to "update" it.

---

[6] Exhibit B has been filed in slightly redacted form, in the utmost of caution, to protect information Defendant identified as Attorneys Eyes Only.

Not knowing the significance (if any) of Defendant's delinquent discovery, Plaintiff requested a one-week extension of time to pursue a motion in limine directed towards this new data. The Court granted this request. *See* [Dkt. 55]. Plaintiff was hopeful that Defendant would confer with Plaintiff in good faith to provide reasonable explanations for the changing discovery productions. Instead, Defendant has essentially ignored Plaintiff. *See* Exhibit C Email thread between counsel.

Because Plaintiff has been unable to obtain a satisfactory explanation for this delinquent production, Plaintiff requests that a corporate representative testify under oath to explain the process it used to generate this new data, why it was produced so late, and what the changes really mean (if anything). Allowing Defendant to proceed by potentially relying on data that was not made available during the discovery period is unduly prejudicial to Plaintiff.

Because Defendant's delay was entirely of its own making, Defendant should bear the fee-shifting consequences of Fed. R. Civ. P. 37. For instance, Defendant did not explain what had changed with the data, so Plaintiff was forced to analyze the previously produced versions of this data (many hundreds of pages of a database export that Defendant refused to produce in a native format). And that analysis *appears* to indicate that Defendant's common law rights are narrower than previously expected:

> Substantively reviewing Defendant's 8th supplemental production, the case factually appears better for Plaintiff. Less than 0.9% of Defendant's sales prior to DD-USA's federal trademark rights are from customers who have a Jacksonville-based zip code (the "pre-registration sales"). It appears there were, at most, 18 sales (instead of the 23 we had previously thought). Worse still, since DD-USA's federal trademark rights issued, Defendant has only had 13 more transactions to customers with Jacksonville-based zip codes for a negligible amount. Defendant has no basis for having interfered with DDUSA's business plans.

Exhibit B. Notably, Defendant did not deny this analysis in its response letter.

Defendant's apparent alternative argument is that this delinquent data is simply a combination of previously produced data: "The main difference with the [eighth supplemental document production] and the earlier documents is that the sales and customer number are listed together in one document with the customer's location, which was not previously possible for Defendant." *See* Exhibit D, Letter from B. Maxey to W. Pollack, May 3, 2018. Surely Defendant did not need to reproduce data just so that different spreadsheet columns could be connected together in a manner that Defendant now feels is more appropriate. Tellingly, this eighth supplemental document production includes heat maps presenting this new data in a fashion that Defendant likely believes is persuasive for telling its story.

How Defendant went through hundreds of pages of customer data records to identify a handful of errors is also important for Plaintiff to understand precisely what data it should and can rely on if trial is necessary. Indeed, Defendant's response letter makes clear it intends to rely on all of the customer data it has provided, both before and after the close of discovery. *See id*. at 2 ("Any of these documents show Defendant's sales to customers throughout the state of Florida.")

## ARGUMENT

Federal Rule of Civil Procedure 37(c)(1) provides that "[if] a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, *or at a trial*, unless the failure was substantially justified or is harmless." (emphasis added). "Rule 37 sanctions are intended to compensate the court and other parties for the added expense caused by discovery abuses, and to penalize the offending party or lawyer." *SCQuARE Intern., Ltd. v. BBDO Atlanta, Inc.*, 2008 WL 228032, at *3 (N.D.Ga. Jan. 25, 2008). The sanctions imposed by Rule 37 are self-executing when the

failure to produce information is not substantially justified or harmless. *See Bray & Gillespie Mgmt., LLC v. Lexington Ins. Co.*, 2009 WL 1043974, at *5 (M.D. Fla. April 17, 2009). Defendant bears the burden of justifying its failure to produce documents which should have been produced during the discovery period. *See Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 824 (11th Cir. 2009) ("The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party.").

The Court has the power to fashion an appropriate remedy. *See* Fed. R. Civ. P. 37(c)(1)(C). *See also Burke v Laboratory Corp. of America*, 2009 WL 3157633 at *2 (M.D. Fla. Sept. 25, 2009); *Water v. HDR Engeineering, Inc.*, 2011 WL 13176484 at *9 (M.D. Fla. May 11, 2011). Here, Defendant has failed to explain the differences in production (other than vague comments that "it was determined that zip codes were incorrect in the Edge database"). As such, Plaintiff believes an appropriate remedy is to permit Plaintiff to depose Defendant to learn, under oath, what changes were made, why, how, etc. And given that this delinquent production was not substantially justified, Defendant should bear the cost of this supplemental deposition.

Defendant's failure to produce this data during discovery has prejudiced Plaintiff by depriving Plaintiff of any opportunity to question witnesses regarding the new data, or otherwise explore the changes in the information and documents produced. *See, e.g., King v. Kennesaw State Univ.*, 2007 WL 2713252, at *7 (N.D. Ga. Sept. 13, 2007) (plaintiff's failure to disclose evidence not harmless because defendant could not depose witnesses or otherwise seek additional discovery concerning late-disclosed documents). Notably, the Court has the power to preclude Defendant from introducing evidence at trial which was not timely produced during the discovery period. *See Terrell v. OTS, Inc.*, 2011 WL 864501, at *2 (N.D. Ga. March 9, 2011) (precluding party from using at trial any document not timely disclosed during discovery);

*SCQuARE Intern.*, 2008 WL 228032 at *3 (same); *see also Williams v. Williamson*, 2009 WL 2982835, at *7-*8 (M.D. Ga. Sept. 11, 2009) (excluding documents first revealed in response to a summary judgment motion as a sanction consistent with Rule 37(c)(1)).  Here, Plaintiff seeks to learn the value (if any) of the delinquent data, but respectfully requests that the Court require Defendant to bear the cost of this additional deposition because the delay was entirely of Defendant's making, and would otherwise result in unfair prejudice to Plaintiff.  Additionally, since the delinquent discovery was not provided until months after the close of discovery, Plaintiff has not had a fair opportunity to consider whether a motion in limine directed to this delinquent discovery is necessary.  As such, Plaintiff additionally requests the deadline for filing such a motion directed to this delinquent discovery be extended until one-week after Plaintiff concludes the requested deposition.

## 3.01(g) CERTIFICATION

Pursuant to L.R. 3.01 (g), counsel for Plaintiff conferred with counsel for Defendant, who opposes this motion.

May 14, 2018

*/s/ Woodrow H. Pollack*
Woodrow H. Pollack
Florida Bar No. 26802
Shutts & Bowen, LLP
4301 W Boy Scout Blvd
Suite 300
Tampa, FL 33607
(813) 229-8900
(813) 227-8234 (facsimile)
wpollack@shutts.com

Gregory W. Herbert
Florida Bar No. 111510
Greenberg Traurig, LLP
450 South Orange Avenue
Suite 650
Orlando, FL 32801
(407) 420-1000

        (407) 841-1295 (facsimile)
herbertg@gtlaw.com

Jonathan D. Reichman
*Admitted pro hac vice*
Jessica Cohen-Nowak
*Admitted pro hac vice*
Andrews Kurth Kenyon LLP
One Broadway
New York, NY 10004
(212) 425-7200
(212) 425-5288 (facsimile)
jreichman@akklp.com
jcohen-nowak@andrewskurthkenyon.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on May 14, 2018 a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

        */s/ Woodrow H. Pollack*
        Woodrow H. Pollack